**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| BAYMONT FRANCHISE SYSTEMS, INC., | No. 23-cv-03728 (MEF)(AME) |
| *Plaintiff*, |  |
| v. | **OPINION and ORDER** |
| NARNARAYANDEV, LLC, et al., |  |
| *Defendants.* |  |

**Table of Contents**

I.    **Background**

    A.    **Allegations**

    B.    **Procedural History**

    C.    **The Motion**

    D.    **The Court's Approach**

II.   **General Legal Principles**

    A.    **Jurisdiction**

    B.    **Service**

    C.    **The Plaintiff's Claim**

    D.    **The Equities**

III.  **Analysis**

    A.    **Jurisdiction**

    B.    **Service**

    C.    **The Plaintiff's Claim**

    D.    **The Equities**

        1.    **Prejudice**

        2.    **Litigable Defense**

          **3.    Culpable Conduct**
**IV.   Damages**
       **A.    Liquidated Damages**
       **B.    Prejudgment Interest**
**V.   Conclusion and Next Steps**

*       *       *

A hotel franchisor sued a hotel operator and its guarantors for breach of contract.

The Clerk of Court entered a default against each defendant.

The hotel franchisor has now moved for default judgment.

The motion will be granted unless the defendants take appropriate steps within seven days.

*       *       *

**I.    Background**

      **A.    Allegations**

The allegations, as relevant for now, are set out here.

In 2021, a hotel franchisor ("Hotel Franchisor"[1]) and a hotel operator ("Hotel Operator"[2]) entered into an agreement ("Franchise Agreement"[3]).  See Complaint ¶ 12.

The Hotel Operator had certain obligations if it terminated the Franchise Agreement.  See id. ¶¶ 19-21; Franchise Agreement § 12.1; see also Franchise Agreement § 11.2.

---

[1]   Baymont Franchise Systems, Inc.

[2]   Narnarayandev, LLC.

[3]   The Franchise Agreement is Exhibit A to the Affidavit of Kendra Mallet in Support of Plaintiff's Motion for Final Judgment by Default Against Defendants ("Mallet Affidavit").

The Hotel Franchisor also entered into a guaranty ("Guaranty"[4]) with several guarantors ("Guarantors"[5]).  Under the Guaranty, if the Hotel Operator did not fulfill certain obligations under the Franchise Agreement, the Guarantors had to step in.  See Guaranty at 1.

In 2023, the Hotel Operator terminated the Franchise Agreement. See Complaint ¶ 28.

But the Hotel Operator did not make required termination payments to the Hotel Franchisor.  See id. ¶ 29.  And the Guarantors did not make those payments either.  See id. ¶ 57.

###   B.   **Procedural History**

In light of the above, the Hotel Franchisor sued the Hotel Operator and the Guarantors.

Collectively, the Hotel Operator and the Guarantors are called "the Defendants."  The Hotel Franchisor is called "the Plaintiff."

The lawsuit's core claim: the Franchise Agreement and the Guaranty were breached, and the Plaintiff is therefore entitled to damages.  See id. ¶¶ 31–63.

The Defendants have not appeared, and the Clerk of Court entered a default against them.

###   C.   **The Motion**

The Plaintiff now moves for default judgment as to: (a) the Defendants' liability for breach of the Franchise Agreement and the Guaranty; (b) liquidated damages for those breaches; and (c) prejudgment interest.  See Motion for Default Judgment at 8.

The motion is before the Court.

###   D.   **The Court's Approach**

After discussing the general legal principles in play here, see Part II, the Court concludes that a default judgement can be entered as to liability, see Part III, and as to liquidated

---

[4]  The Guaranty is Exhibit C to the Mallet Affidavit.

[5]  Jigneshkumar Chhanabhai Patel, Natwarbhai V. Patel, Rita Patel, and Manjulaben N. Patel.

damages, see Part IV.A, but not as to prejudgment interest, see Part IV.B.

Nonetheless, the Court briefly holds its decision in abeyance, to give the Defendants a last chance to appear and participate. See Part V.

## II.  **General Legal Principles**

A default judgment is a judgment issued "against defendants who failed to appear or participate in the proceedings[.]"  Chafin v. Chafin, 568 U.S. 165, 175 (2013).

Getting to default is a two-step process --- as a practical matter, sometimes three.  See 10 Moore's Federal Practice --- Civil §§ 55.10, 55.31, 55.80 (2024) (describing the three steps); Wright & Miller, 10A Fed. Prac. & Proc. Civ. § 2695 (same); see also Fed. R. Civ. P. 55(a)-(c), 60(b).

In the first step, the Clerk of Court enters a default on the Court's docket.  See Fed. R. Civ. P. 55(a); see also Handle v. Postmaster Gen., U.S. Postal Serv., 806 F. App'x 95, 98 (3d Cir. 2020); FirstBank Puerto Rico v. Jaymo Props., LLC, 379 F. App'x 166, 170 (3d Cir. 2010); 10 Moore's Federal Practice --- Civil § 55.10 (2024); Wright & Miller, 10A Fed. Prac. & Proc. Civ. § 2682.

This is a heads-up.  It broadcasts: a default judgment may be coming soon --- the defendant should participate if he wants to avoid losing the case by simple inaction.

In the second step, the plaintiff typically moves the Court (not the Clerk) for a default judgment.  See Fed. R. Civ. P. 55(b); see also United States v. Wunder, 829 F. App'x 589, 590 (3d Cir. 2020); Brawer v. Horowitz, 535 F.2d 830, 833 (3d Cir. 1976); 10 Moore's Federal Practice --- Civil § 55.30 (2024); Wright & Miller, 10A Fed. Prac. & Proc. Civ. § 2684.

If the motion is granted, there is then the possibility of a third step --- a motion from the defendant to vacate the default judgment.  See Fed. R. Civ. P. 55(c), 60(b); see also United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194-95 (3d Cir. 1984); 10 Moore's Federal Practice --- Civil § 55.80 (2024); Wright & Miller, 10A Fed. Prac. & Proc. Civ. § 2695.

                    *    *    *

This case is at step two.

The Clerk of Court has entered default.  And as noted, a motion for default judgment is before the Court.

        \*     \*     \*

To assess a motion for default judgment, courts focus on four questions.

First, jurisdiction.  Does the court have the power to exercise judgment over the case?

Second, service.  Is the defendant aware of the case?

Third, the plaintiff's claim.  Is it solid enough?

And fourth, the equities.  See Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000).[6]  Is it fair to enter a default judgment?

Take a closer look now at each of these.

## A.    Jurisdiction

Jurisdiction is, as always, the "first and fundamental question."  Great S. Fire Proof Hotel Co. v. Jones, 177 U.S. 449, 453 (1900).

As part of deciding whether to grant a default judgment motion, the court must consider whether it has subject-matter jurisdiction.  See Dambach v. United States, 211 F. App'x 105, 109 (3d Cir. 2006) ("[The defendants] had a meritorious defense to the action --- one that the District Court would have been obligated to consider sua sponte before entering default judgment --- the lack of subject-matter jurisdiction."); accord,

---

[6]  In Chamberlain, an appeal was taken from the denial of a motion for default judgment.  See 210 F.3d at 164.  Chamberlain was therefore a step-two case.  But the Chamberlain court cited a standard used in step three, that is, in the context of a motion to vacate an already-entered default judgment.  See id. (citing $55,518.05 in U.S. Currency, 728 F.2d at 195).  This is not surprising.  In the Third Circuit, the standards for granting a motion for default judgment (step two) and for granting a motion to vacate a default judgment (step three) blend together to an extent.  See Hill v. Williamsport Police Dep't, 69 F. App'x 49, 51–52 (3d Cir. 2003); cf. id. at 52 (Rendell, J., concurring); see also Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1148 (3d Cir. 1990) (citing Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73–74 (3d Cir. 1987)).

e.g., Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th
Cir. 1986) ("[W]hen entry of a default judgment is sought . . .,
the district court has an affirmative duty to look into its
jurisdiction both over the subject matter and the parties."); In
re Tuli, 172 F.3d 707, 712 (9th Cir. 1999) (similar); Sys. Pipe
& Supply, Inc. v. M/V VIKTOR KURNATOVSKIY, 242 F.3d 322, 324
(5th Cir. 2001) (similar); Hawkins v. i-TV Digitalis Tavkozlesi
zrt, 935 F.3d 211, 221 (4th Cir. 2019) ("Sometimes, the
defendant never shows up at all.  And that is his right: if the
court lacks jurisdiction over the subject matter of the dispute,
he need not appear.").

And the court must also consider whether there is personal
jurisdiction over the defendant when he has failed to appear.
See Allaham v. Naddaf, 635 F. App'x 32, 36-37 (3d Cir. 2015)
("While unlike subject matter jurisdiction, a court generally
may not raise personal jurisdiction sua sponte, when a default
judgment is requested, a court is required to make a threshold
determination regarding any jurisdictional defects."); accord,
e.g., Williams, 802 F.2d at 1203; In re Tuli, 172 F.3d at 712;
Sys. Pipe & Supply, Inc., 242 F.3d at 324; e360 Insight v. The
Spamhaus Project, 500 F.3d 594, 598 (7th Cir. 2007) ("Default
judgments rendered without personal jurisdiction are void[.]");
Kaplan v. Cent. Bank of the Islamic Republic of Iran, 896 F.3d
501, 511 (D.C. Cir. 2018) ("[The defendants'] absence imposed an
independent obligation on the district court to satisfy itself
of its personal jurisdiction before entering a default judgment
against a missing party.").

> ### B.  Service

On a motion for default judgment, a court should next determine
whether the defendant in question has been properly served.  See
Gold Kist, Inc. v. Laurinburg Oil Co., Inc., 756 F.2d 14, 19 (3d
Cir. 1985) ("A default judgment entered when there has been no
proper service . . . is . . . void.").

There are two main reasons why.

First, proper service is always fundamental.  It goes to
jurisdiction.  See Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.,
484 U.S. 97, 104 (1987) ("Before a federal court may exercise
personal jurisdiction over a defendant, the procedural
requirement of service of summons must be satisfied."); see also
Grand Ent. Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476,
492 (3d Cir. 1993) ("Proper service is . . . a prerequisite to
personal jurisdiction.").

But when it comes to default judgment, there is also a <u>second</u> reason to focus on service: doing so not only helps to <u>clarify</u> whether the court has the power to enter judgment --- it also sheds light on why the defendant is proceeding as he is.

This point is unpacked just below.

\*     \*     \*

When a defendant has not appeared, and the plaintiff moves for default, any number of things might be going on. Focus here on two possibilities.

The first possibility: the defendant may not be participating in the case because he does not know about it.

Or a second possibility: the defendant <u>is</u> aware of the case, but believes the plaintiff's claims are sound --- and would rather fold than invest in a losing court fight. In this second circumstance, the defendant's absence is a choice. He is not hanging back because he does not know about the case, but rather because he does. The defendant is opting to accede to the allegations against him, just as he could by going to the expense of appearing in the case and formally admitting the plaintiff's allegations. <u>See</u> <u>generally</u> Fed. R. Civ. P. 8(b).

Service marks the boundary between these two possibilities.

On the first possibility, the defendant has not been served.

In that circumstance, the law's approach is that a default judgment cannot be entered against him. <u>See</u> <u>Gold Kist</u>, 756 F.2d at 19.

On the second possibility, the defendant has been served but then chooses not to appear.

In that circumstance, the law has generally opted to infer that the allegations against the defendant can be taken as having been quietly admitted by him --- and therefore "presumed to be true." <u>Thomson</u> v. <u>Wooster</u>, 114 U.S. 104, 110 (1885) (quoting Geoffrey Gilbert, <u>Forum Romanum</u> 36 (Samuel Tyler ed., 1st ed. 1874)); <u>accord</u>, <u>e.g.</u>, <u>Comdyne I, Inc.</u>, 908 F.2d at 1149 ("A consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (cleaned up);

<u>DIRECTV, Inc.</u> v. <u>Pepe</u>, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (closely similar).[7]

\*    \*    \*

Bottom line: service is doubly relevant here.

It is a component of the jurisdiction of <u>the</u> <u>court</u>.

And it is also an indicator of how <u>the</u> <u>defendant</u> is seeing things.  If he is aware of the case through service but has opted to sit back, the defendant is generally taken by the law as having admitted the plaintiff's allegations --- and those allegations can therefore be treated "as though confessed."[8]

---

[7]  Two points.  <u>First</u>, the inference that the defendant is not participating because he has "confessed" may not <u>always</u> make sense.  <u>See</u>, <u>e.g.</u>, Part II.C.  <u>Second</u>, perhaps because of the special importance of service in this context, the law historically required intense efforts to serve a defendant before a default judgment could be obtained against him.  During the 18th century, William Blackstone laid out the required service steps at length.  <u>See</u> 3 William Blackstone, <u>Commentaries</u> \*443-45.  And during the 19th century, the Supreme Court suggested that a default judgment could follow only when "the whole process of the court has been awarded against" the defendant.  <u>Thomson</u>, 114 U.S. at 110 (quoting <u>Forum Romanum</u> at 36); <u>see also</u> <u>Williams</u> v. <u>Corwin</u>, Hopk. Ch. 471, 471 (N.Y. Ch. 1824) (describing the "long chain of process [that] was employed").  Picking up on these strands to an extent, one modern commentator has suggested that whether a default judgment should be granted may depend, in part, not just on whether there has been service, but also on the quality of the service.  <u>See</u> Pamela Bookman, <u>Default Procedures</u>, 173 Univ. Pa. L. Rev. (forthcoming 2025) (manuscript at 14) (accessed on the public website of SSRN on November 22, 2024: https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4785811) (referring to the possibility that default motions might be handled differently depending on whether the "gold standard" of "in-hand service to the defendant" has been used).

[8]  "[A]s though confessed" is a translation of a Latin phrase: "pro confesso."  <u>See</u> Pro Confesso, <u>Merriam-Webster Legal Dictionary</u>.  In Anglo-American law, a bill (a type of pleading in equity) taken <u>pro</u> <u>confesso</u> was treated as though confessed.  <u>See</u> Bill Taken Pro Confesso, <u>Black's Law Dictionary</u> (12th ed. 2024); <u>Forum Romanum</u> at 36 (citing Nov. 112 c.3); <u>see</u> <u>also</u> <u>Thomson</u>, 114 U.S. at 110.  Like a contemporary default judgment,

C.    **The Plaintiff's Claim**

In assessing a motion for default, the court must also take a quick look to the merits and assess the plaintiff's claim.  See Surtain v. Hamlin Terrace Fdn., 789 F.3d 1239, 1245 (11th Cir. 2015) ("[A] motion for default judgment is like a reverse motion to dismiss for failure to state a claim."); Nishimatsu Const. Co. v. Houston Nat. Bank, 515 F.2d 1200, 1206 (5th Cir. 1975) ("There must be a sufficient basis in the pleadings for the judgment entered."); Cong. Hunger Ctr. v. Gurey, 308 F. Supp. 3d 223, 227–28 (D.D.C. 2018) ("[I]t remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action.") (quoting Wright & Miller, 10A Fed. Prac. and Proc. Civ. § 2688.1 (4th ed.)); Highland Cap. Corp. v. Pasto, 2022 WL 17733674, at *2 (D.N.J. Dec. 16, 2022) (denying default judgment when complaint did not state a claim); TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC, 2016 WL 716874, at *2 (D.N.J. Feb. 22, 2016) (same); Bryant v. Jackson, 2015 WL 3616974, at *3 (D.N.J. June 8, 2015) (same); Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 498 (C.D. Cal. 2003) ("A party seeking a default judgment must state a claim upon which it may recover."); see also Thomson, 114 U.S. at 114 ("[A] decree pro confesso is not a decree . . . such as the complainant chooses to take it; but that it is made . . . according to what is proper to be decreed[.]"); cf. Ali v. Jersey City Parking Auth., 594 F. App'x 730, 732 (3d Cir. 2014) (affirming a denial of default judgment, under an abuse-of-discretion standard, see id. at 731 n.1, where the plaintiff had not stated a "plausible claim on the merits").

*    *    *

There are a number of reasons why a quick look to the merits is necessary in this context.  Take two here.

*    *    *

First, some claims are so plainly frivolous that a federal court cannot exercise federal question jurisdiction on the basis of them.  See Duke Power Co. v. Carolina Env't Study Grp., Inc., 438 U.S. 59, 70–71 (1978); Hagans v. Lavine, 415 U.S. 528, 542–43 (1974); Oneida Indian Nation v. Oneida Cnty., N.Y., 414 U.S. 661, 666–67 (1974); Bell v. Hood, 327 U.S. 678, 682–83 (1946); Growth Horizons, Inc. v. Delaware Cnty., Pa., 983 F.2d 1277,

---

a bill was taken pro confesso following non-appearance of a defendant.  See Thomson, 114 U.S. at 110.

1280-81 (3d Cir. 1993); Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1408-09 (3d Cir. 1991).

Imagine a case in which one neighbor sues another, claiming that he fell and got hurt because she did not shovel the snow from her driveway.  If the injured neighbor's theory is that this violated the First Amendment, then that claim does not just fail --- it likely fails so badly that there is no federal question jurisdiction over the claim at all.

In circumstances like these, the merits and jurisdiction collapse onto each other: because of the pervasive weakness of the claim on the merits, there is no jurisdiction in the first place.

And this suggests that the normal rule (courts must assess jurisdiction sua sponte) implies that courts must also assess the merits sua sponte (because a case's weakness on the merits may imply a lack of jurisdiction).  After all, if a case is so badly meritless that a federal court would lack jurisdiction, see Duke Power, 438 U.S. at 70-71, Bell, 327 U.S. at 682-23, Growth Horizons, 983 F.2d at 1280-81, the court lacks the power to enter judgment, even if no one is objecting.

To address this possibility in the absence of a defendant who is actively participating, the court must generally, on its own, take a brief look at the merits.[9]

*    *    *

Take now a second reason why, in the default judgment context, courts quickly analyze the merits.

As noted above, see Part II.B, the law has long treated non-participating defendants "as though [they] confessed" to the allegations in the plaintiff's complaint.

---

[9]  This does not imply that sua sponte consideration of the merits is appropriate in cases in which the defendant is actively involved.  In such cases, the defendant can be counted on to speak up if the plaintiff has filed a thoroughly frivolous claim.  Cf. Hacker v. Elec. Last Mile Sols., 722 F. Supp. 3d 480, 489 (D.N.J. 2024) (making a similar point in another context in which interested parties are absent).

But this is something of a legal fiction.[10]  The defendant did
not _actually_ confess.  Legal fictions do not generally apply
across the board, in all possibly relevant circumstances.  See,
_e.g.,_ 3 William Blackstone, Commentaries *43 (describing the
limited use of "fictions of law").  They are applied only when
they make sense.

When does it make sense to infer that an absent defendant is not
participating because he has "confessed"?

A judicial look to the merits can help to answer the question.

If the plaintiff's allegations are solid on the merits, then
that buttresses the inference that the defendant is purposefully
absent --- that, on looking at the strength of the claims
against him, he consciously decided to give in rather than to
fight.  In the face of a strong-enough complaint, it is sensible
to treat a defendant "as though [he] confessed."

But look, too, to the opposite end of the spectrum.

If the plaintiff's allegations are badly frivolous, then it is
harder to imagine that the defendant studied the allegations and
nodded along in agreement.  Given a weak complaint, it makes
less sense to infer that the defendant's absence is the result
of reading the complaint and choosing to give in.  And
therefore, when the complaint is markedly weak, there is less
reason to treat the defendant as having "confessed."[11]

---

[10]  A legal fiction is "[a]n assumption that something is true
even though it may be untrue."  Legal Fiction, Black's Law
Dictionary (12th ed. 2024).

[11]  In the face of allegations that look obviously flimsy to a
court, why would a defendant not just have appeared to fight
them?  There are a range of possibilities.  Maybe, for example,
the complaint was simply hard to follow for a non-represented
defendant, because it did not meet the "short and plain"
requirement of Federal Rule of Civil Procedure 8.  Cf.
Kochetkova v. Garnet Health Med. Ctr., 697 F. Supp. 3d 276, 285
n.17 (D.N.J. 2023).  And note: if there is a real question in a
given case as to whether a particular non-appearing defendant
was confused by the complaint, that need not be the end of the
road.  The court, for example, might opt to require service on
the defendant of a short judicially-prepared statement
explaining that without further action on his part by a certain
date a default will soon be entered against him.  See Russo v.
Gov't Emps. Ins. Co., 345 F.R.D. 65, 79 (D.N.J. 2023) (taking a

In short: a brief analysis of the merits provides closure as to jurisdiction, and it also helps to determine whether to infer that a defendant who is served, but has not appeared, should be treated as "as though [he] confessed."  The stronger the plaintiff's claims, the stronger the likelihood that this sort of "confess[ion]" inference is the one to draw.[12]

    **D.**   **The Equities**

Finally, to determine whether default judgment is warranted, courts look to the overall equities of the case, with a focus on the factors set out by the Third Circuit in Chamberlain.  These are: "(1) prejudice to the plaintiff if default is denied; (2) whether the defendant appears to have a litigable defense; and (3) whether defendant's delay is due to culpable conduct."  Chamberlain, 210 F.3d at 164 (citing $55,518.05 in U.S. Currency, 728 F.2d at 195).[13]

closely similar approach in an analogous situation); see generally footnote 13 (explaining the basis of the analogy).

[12]  Also: to the extent that a look to the merits of a plaintiff's claims provides some "meaningful testing," Daniel Wilf-Townsend, Assembly-Line Plaintiffs, 135 Harv. L. Rev. 1704, 1723 (2022), that may potentially help to protect an absent defendant's interest in accurate adjudication.  See, e.g., Heller v. Doe, 509 U.S. 312, 332 (1993) (under "the Due Process Clause, the interest of a person subject to governmental action is in the accurate determination of the matters before the court"); cf. Mathews v. Eldridge, 424 U.S. 319, 335 (1976) (holding that, as to Due Process, one concern is to avoid "erroneous" decisions "through the procedures used"); accord, e.g., Wilkinson v. Austin, 545 U.S. 209, 225-26 (2005) (applying Matthews); Hamdi v. Rumsfeld, 542 U.S. 507, 529-530 (2004) (same).

[13]  Note the similarities between a motion for default judgment and a motion to dismiss for non-prosecution.  In each case, a party (the defendant in the default context, and the plaintiff in the non-prosecution context) fails to appropriately participate in the case --- and there is then a motion from the opposing party arguing that the non-participating party should bear the consequences of her inaction.  Perhaps not surprisingly, the law that governs one situation (involving plaintiffs and non-prosecution, see Poulis v. State Farm Cas. Co., 747 F.2d 863, 868 (3d Cir. 1994)), is similar to the law that governs the other situation (involving defendants and default judgments, see Chamberlain, 210 F.3d at 164).  For

III. **Analysis**

Turn now to the four inquiries sketched out above, see Part II, and how they play out in this case.

A. **Jurisdiction**

The first question: does the Court have (a) subject-matter jurisdiction and (b) personal jurisdiction?  See Part II.A.

Yes and yes.  The Court has subject-matter jurisdiction under the diversity statute, see 28 U.S.C. § 1332, given the allegations in the complaint.  See Complaint ¶¶ 1-8, 34, 40, 49, 53, 57, 63 (describing the disparate citizenship of the various parties, and an amount in controversy of over $75,000).  And the Court has personal jurisdiction.  The Defendants agreed to personal jurisdiction in the District of New Jersey, see Franchise Agreement § 17.6.3, Guaranty at 1, and that is enough. See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703-04 (1982) (stating that parties to a contract can agree ahead of time to the jurisdiction of a given court) (citing Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 316 (1964)).

Bottom line: the Court has jurisdiction over this case.

B. **Service**

The second question: were the Defendants properly served?  See Part II.B.

Yes.  See Docket Entries 5-6; see also Fed. R. Civ. P. 4(e), (h).

---

example, in both areas of the law, there is a look to prejudice, see id. (default judgment), Hildebrand v. Allegheny Cnty., 923 F.3d 128, 132 (3d Cir. 2019) (non-prosecution); party culpability, see Chamberlain, 210 F.3d at 164, Hildebrand, 923 F.3d at 132; and meritoriousness, see Chamberlain, 210 F.3d at 164, Hildebrand, 923 F.3d at 132.  There are suggestions this legal overlap is by design.  See Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 919 (3d Cir. 1992) (quoting Comdyne I, Inc., 908 F.2d at, 1148).  And this overlap seems to imply that, in analyzing the Chamberlain defendant/default judgment case law, it may make sense to reason where appropriate from the Poulis plaintiff/non-prosecution case law.

This lays down a solid foundation for application here of an "as though confessed" inference --- an inference that the Defendants saw the Complaint, quietly agreed to its allegations, and made a conscious choice to throw in the towel by not appearing.  <u>See generally</u> Part II.B.

###    C.    **The Plaintiff's Claim**

The third question: do the Plaintiff's allegations add up to a solid claim?  <u>See</u> Part II.C.

Here, the Plaintiff alleges breach of contract.

Under New Jersey law,[14] the elements of a claim for breach of contract are "[1] a valid contract between the parties, [2] the opposing party's failure to perform a defined obligation under the contract, and [3] a breach causing the claimant to sustain[ ] damages."  <u>Nelson</u> v. <u>Elizabeth Bd. of Educ.</u>, 466 N.J. Super. 325, 342 (App. Div. 2021); <u>see also</u> <u>Globe Motor Co.</u> v. <u>Igdalev</u>, 225 N.J. 469, 482 (2016).

These boxes are checked.

The Plaintiff has, <u>first</u>, alleged two seemingly valid contracts, the Franchise Agreement, <u>see</u> Complaint ¶ 12, and the Guaranty, <u>see</u> <u>id</u>. ¶¶ 22-24.

<u>Second</u>, the Plaintiff has alleged non-performance.  The Plaintiff asserts that the Hotel Operator-Defendant failed to perform by terminating the contract early, and then by not paying the costs of the premature termination.  <u>See</u> <u>id</u>. ¶¶ 35-40.  As to the Guarantor-Defendants, the Plaintiff asserts they failed to cover for the Hotel Operator's missed payments when they were supposed to.  <u>See</u> <u>id</u>. ¶¶ 54-57.  All of this adds up to nonperformance.  <u>See</u> <u>Wingate Inns Int'l, Inc.</u> v. <u>Univ. Hosp. Sols., LLC</u>, 2024 WL 4262488, at *3 (D.N.J. Sept. 23, 2024).

---

[14]  The Plaintiff assumes New Jersey law controls.  And for good reason: each contract says it is controlled by New Jersey law.  <u>See</u> Franchise Agreement § 17.6.1; Guaranty at 1 (recognizing that § 17.6.1 of the Franchise Agreement controls); <u>see generally</u> <u>Instructional Sys., Inc.</u> v. <u>Comput. Curriculum Corp.</u>, 130 N.J. 324, 341 (1992) ("Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice.").

<u>Third</u> and finally, the Plaintiff was damaged by the referenced nonperformance because it is owed money.  <u>See</u> <u>id</u>. ("Nonpayment of money that is owed is damaging.").

The Complaint here appears to make out a strong and straightforward case.

This makes it especially sensible to apply the "as though confessed" inference.  <u>See</u> <u>generally</u> Part II.C.  Given the strength of the allegations, it makes sense to infer that the Defendants quietly acceded to them and consciously decided to take a default judgment rather than to litigate.

### D.    **The Equities**

Take up, finally, the equities.  Zero in on the three <u>Chamberlain</u> factors.  <u>See</u> Part II.D.

#### 1.    **Prejudice**

The first factor: whether the Plaintiff will be prejudiced if default judgment is not granted.  <u>See</u> <u>Chamberlain</u>, 210 F.3d at 164.

The Plaintiff says yes, noting that it "has incurred additional costs, has been unable to move forward the prosecution of its lawsuit, and has been delayed in receiving relief."  Motion for Default Judgment at 7.

This points the needle in the direction of default judgment.

District courts in the Third Circuit routinely hold that prejudice is established under the first <u>Chamberlain</u> prong when the defendant, though served, does not appear --- and because of this the plaintiff's remedy is delayed.  <u>See</u> <u>Broadcast Music, Inc.</u> v. <u>George Moore Enters., Inc.</u>, 184 F. Supp. 3d 166, 170 (W.D. Pa. 2016); <u>Tristrata Tech., Inc.</u> v. <u>Med. Skin Therapy Rsch., Inc.</u>, 270 F.R.D. 161, 164 (D. Del. 2010); <u>Rose Containerline, Inc.</u> v. <u>Omega Shipping Co.</u>, 2011 WL 1564637, at *3 (D.N.J. Apr. 25, 2011); <u>but see</u> <u>Indagro S.A.</u> v. <u>Nilva</u>, 2008 WL 2446814, at *1 (D.N.J. June 16, 2008).

In short: the first <u>Chamberlain</u> factor weighs in favor of default judgment.

* * *

Before moving on, note a possible counterargument: a Third Circuit default judgment opinion holds that a "[d]elay in

realizing satisfaction on a claim rarely serves to establish
. . . prejudice." Feliciano v. Reliant Tooling Co., 691 F.2d
653, 657 (3d Cir. 1982) (citing Tozer v. Charles A. Krause Mill.
Co., 189 F.2d 242, 246 (3d Cir. 1951)).

But the quoted case, Feliciano, is distinguishable.

There, the procedural posture was different --- a motion to
vacate a default judgment, not a motion for one.  This does not
usually make a difference.  See footnote 6.  But here it does.

If a motion to vacate a default judgment is granted, the
defendant can be expected to jump right into the case and begin
litigating.  After all, seeking belated permission to mount an
active defense is the core reason to move to vacate a default
judgment in the first place.

That the defendant has appeared and wants in on the case means
that, if a motion to vacate a default judgment is granted, the
"[d]elay in realizing satisfaction," id., now has a light at the
end of the tunnel.  And, per the Court of Appeals in Feliciano,
the now-limited period of delay "rarely," id., establishes
prejudice.

But in the context of a motion for default, if prejudice could
not be established based on the delay shouldered by the
plaintiff, then delay would, in many cases, be essentially
unlimited --- because many plaintiffs would simply not be able
to make out one of the Chamberlain factors (prejudice) and
therefore would never ultimately be able to get to default
judgment.  Cf. H.F. Livermore Corp. v. Aktiengesellschaft
Gebruder Loepfe, 432 F.2d 689, 692 (D.C. Cir. 1970) ("[the
diligent party must be protected lest he be faced with
interminable delay").

Put differently, "delay does not equal prejudice" in the
Feliciano motion-to-vacate posture is another way of saying that
a now-limited delay should not be allowed to stave off
litigation on the merits by providing a basis for denying a
motion to vacate default.

By contrast, "delay does not equal prejudice" in a motion-for-
default-judgment posture would be a way of generating delay ---
or at least what feels like it to a plaintiff: no remedy.  Why
is that?  Because for many motion-for-default-judgment
plaintiffs, their basic concern, as in this case, is that they
are simply not being timely paid.  If that delay were not enough
to satisfy the prejudice prong of the Chamberlain test, then

16

those plaintiffs would have their remedy kicked down the road,
maybe forever --- because they would be unable to meet the basic
test for winning a motion for default judgment.

Bottom line: in the motion for default judgment context,
Feliciano does not control the relevant point, and a plaintiff
can satisfy the first Chamberlain factor by establishing that
she is being meaningfully delayed in receiving relief.

Here, the Defendants have made that showing.

### 2. **Litigable Defense**

The second Chamberlain factor: "whether the defendant has a
litigable defense." See Chamberlain, 210 F.3d at 164.

In this case, as in virtually all motions for default judgment,
this factor can be tricky to work through.

Whether the plaintiff's claim is strong enough is anchored in
judicial consideration of what the plaintiff has put forward in
her complaint.

That is already treated in another part of the default judgment
analysis. See Part II.C.

To be non-redundant, the added inquiry into whether there is "a
litigable defense" presumably includes a look to the sorts of
things that do not show up in a complaint --- factual defenses
and affirmative defenses.

Those are made in a defendant's answer or motion to dismiss.
See Fed. R. Civ. P. 8(c), 12(b).  But an absent defendant has
filed neither one.

This adds a wrinkle: a judicial "litigable defense" inquiry
proceeds without any fixed point for the court to look to.
There is no answer or motion to dismiss to ground the analysis.

*      *      *

In the face of the complexity sketched out just above, there are
two general approaches.

First, some courts have appeared to suggest that when the
defendant has not appeared the "litigable defense" factor does
not weigh in favor or against granting a motion for default
judgment.  See, e.g., Joe Hand Promotions, Inc. v. Waldron, 2013
WL 1007398, at *4 (D.N.J. Mar. 13, 2013); McKinney v. Perez,

17

2020 WL 5743071, at *3 (D.N.J. Sept. 25, 2020); see also Hill, 69 F. App'x at 52 (affirming such an approach under an abuse-of-discretion standard).

But this approach would seem to erase the "litigable defense" inquiry from the Chamberlain analysis.  Why did the Court of Appeals build in the "litigable defense" factor if it does not get weight in the analysis?

Other courts take a second approach: when the defendant does not appear, the "litigable defense" factor weighs in favor of granting the motion for default judgment.  See, e.g., DISH Network L.L.C. v. Jones, 2012 WL 2885933, at *2 (E.D. Pa. July 16, 2012); Harty v. Azad Holdings LLC, 2016 WL 4045338, at *4 (E.D. Pa. July 27, 2016).

This second view seems to be rooted in the "as though confessed" approach that American law has generally taken to default judgments.  See generally Part II.B.  If the defendant had a "litigable defense," he would have appeared and come forward with it.  That he did not is a basis for inferring that he has no such defense.

But there are problems with taking this tack.

First, the "as though confessed" inference implies the need for a quick judicial assessment of the strength of a plaintiff's claims.  See Part II.C.  Why, then, would it not also require the court to quickly get under the hood to examine possible affirmative defenses?

And second, the Third Circuit's Chamberlain test, as noted, looks to whether there is or is not a "litigable defense."  But if that factor always angles in the same direction, in favor of default judgment --- then it is no factor at all.  What the Circuit plainly envisioned as a variable would be converted into a constant --- instead of the Chamberlain "litigable defense" inquiry sometimes pointing in favor of default, it always would.

\*     \*     \*

Against this backdrop, the Court's view is this: under the second Chamberlain factor, the Court must make a quick assessment of any obviously in-play "litigable defenses," and lean on that assessment as part of the overall default judgment analysis.

18

This is consistent with the approach the Court takes to assessing the plaintiff's affirmative claims.  See id.

As a practical matter, any "litigable defenses" inquiry is, as noted, complicated by the fact that it is undertaken before an answer or a motion to dismiss has been filed.

But some defenses readily suggest themselves.  (Think, for example, of an allegedly verbal mortgage and the defense that under the statute of frauds it needed to be written down.[15])

*     *     *

In this case, there is no obviously in-play "litigable defense." There is, for example, no apparent statute of limitations issue. See generally Wisniewski v. Fisher, 857 F.3d 152, 157 (3d Cir. 2017) (holding that "[t]he running of the statute of limitations is an affirmative defense") (citing Fed. R. Civ. P. 8(c)(1)).

Accordingly, the second Chamberlain factor weighs in favor of default judgment.

### 3.  **Culpable Conduct**

Take now the third and final factor: whether the default was the result of the Defendants' culpable conduct.  See Chamberlain, 210 F.3d at 164.

"[T]he culpable conduct standard requires . . . more than mere negligence be demonstrated.  . . . Reckless disregard for repeated communications from plaintiffs and the court . . . can satisfy the . . . standard." Hritz v. Woma Corp., 732 F.2d 1178, 1184 (3d Cir. 1984); see Gross v. Stereo Component Sys., Inc., 700 F.2d 120, 124 (3d Cir. 1983) (defining culpable conduct as "actions taken willfully or in bad faith").

This factor tilts in favor of granting the default motion.

---

[15]  Compare Smith v. CitiMortgage, Inc., 702 F. Supp. 3d 247, 255–56 (D.N.J. 2023) ("[T]he statute of frauds governs . . agreements as to a transfer of an interest in real estate, and a mortgage counts as an interest in real estate for the New Jersey statute of frauds.") (cleaned up) with Raiczyk v. Ocean Cnty. Veterinary Hosp., 377 F.3d 266, 271 n.1 ("[T]he Statute of Frauds is an affirmative defense.") and Fed. R. Civ. P. 8(c)(1) (listing statute of frauds as an affirmative defense).

The parties had agreed to settle.  <u>See</u> Certification of Bryan P. Couch, Esq., in Support of Plaintiff's Motion for Final Judgment by Default Against Defendants ("Couch Certification") ¶ 13; Docket Entry 9.  The Defendants paid part of the settlement. <u>See</u> Couch Certification ¶ 14; Mallet Affidavit ¶ 33.  But they have not paid the rest.  <u>See</u> Couch Certification ¶ 14; Mallet Affidavit ¶ 34.

The Plaintiff has filed motions asking the Court to dismiss the case and enter a consent judgment against the Defendants.  <u>See</u> Notice and Order of Dismissal; Motion to Approve Consent Judgment.  The Court has directed the Defendants to respond to these motions.  <u>See</u> Docket Entries 13, 15, 17.  And per the Court's instructions, all the relevant orders were served on the Defendants.  <u>See</u> Certification of Michele A. Lynch (Jan. 17, 2024); Motion to Approve Consent Judgment, Certification of Service; Certification of Michele A. Lynch (May 6, 2024).  But the Defendants have neither responded nor appeared.

Bottom line: since the partial payment of the settlement agreement, the Defendants have gone silent, in spite of being aware of the Plaintiff's efforts to move the case forward.  This has slammed the brakes on the Plaintiff's ability to get paid. And it amounts to "[r]eckless disregard."  <u>Hritz</u>, 732 F.2d at 1183; <u>cf.</u> <u>Cox</u> v. <u>United Parcel Serv.</u>, 753 F. App'x 103, 106 (3d Cir. 2018) (on a plaintiff's non-prosecution, <u>see</u> footnote 13, coming to a similar conclusion); <u>Roman</u> v. <u>City of Reading</u>, 121 F. App'x 955, 960 (3d Cir. 2005) (same); <u>Chanel, Inc.</u> v. <u>Gordashevsky</u>, 2006 WL 8457203, at *3 (same); <u>Russo</u>, 345 F.R.D. at 78 (same).

The third <u>Chamberlain</u> factor favors granting default judgment here.

**E.   <u>Conclusion</u>**

Of the four relevant inquiries, <u>see</u> Part II, the Court has determined that each weighs in favor of default judgment.  <u>See</u> Part III.A–D.  Accordingly, the motion for default judgment can be granted as to liability.

**IV.  <u>Damages</u>**

Given its conclusion as to liability, the Court turns to consider the Defendants' motion for a default judgment as to liquidated damages, <u>see</u> Part IV.A, and interest on any liquidated damages, <u>see</u> Part IV.B.

The law here in a nutshell: a court may grant default judgment as to damages if damages are for "a sum certain or a sum that can be made certain by computation."  10 Moore's Federal Practice --- Civil § 55.32 (2024); see also Fed. R. Civ. P. 55(b)(1)-(2).  A court may make this determination based on the existing record, or it can hold a hearing.  See generally 10 Moore's Federal Practice --- Civil § 55.32 (2024).

### A.    Liquidated Damages

Liquidated damages are the sort of damages that are often "certain" enough that they can be granted on a default judgment motion, and without the need for a hearing.  See, e.g., KPS & Assocs. v. Designs by FMC, Inc., 318 F.3d 1, 20 (1st Cir. 2003) ("As with a 'sum certain,' a hearing is not normally required if the claim is 'liquidated.' . . . The classic example is an enforceable liquidated damages clause in a contract."); Evans v. Loveland Auto. Invs., Inc., 632 F. App'x 496, 498-99 (10th Cir. 2015) (same); Trs. of Const. Indus. & Laborers Health & Welfare Tr. v. Hartford Fire Ins. Co., 578 F.3d 1126, 1129 (9th Cir. 2009) (assuming liquidated damages can be granted); Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc., 722 F.2d 1319, 1321, 1323 (7th Cir. 1983) (same); see also 10 Moore's Federal Practice --- Civil § 55.32 (2024).

Here, under the Franchise Agreement, liquidated damages become due if the Hotel Operator-Defendant unilaterally terminates the Agreement.  See Franchise Agreement § 12.1.

The Hotel Operator-Defendant did so.  See Complaint ¶ 28; Mallet Affidavit ¶ 21.

Regarding the amount of damages: liquidated damages "will not be less than the product of $2,000 multiplied by the number of [authorized] guest rooms."  Franchise Agreement § 12.1. The Hotel was authorized 59 rooms.  See Mallet Affidavit ¶ 32. Multiplied by $2,000, that puts the amount of liquidated damages at $118,000.

The Defendants have already paid $34,500 of that amount.  See id. ¶ 33.

That leaves the balance at $83,500.  This is an easily calculated "sum certain."

In light of the above, the Plaintiff's motion for default judgment as to liquidated damages can be granted, in the amount of $83,500.

### B.   Prejudgment Interest

The Plaintiff also moves for default judgment as to prejudgment interest.  See Motion for Default Judgment at 8.

But such interest is required only on an invoice being sent to the Defendants.  See Franchise Agreement § 7.3.  And no invoice has apparently been sent, just a notice of termination and an itemized statement.  See Mallet Affidavit, Exhibits E, F.  The Plaintiff has made no argument as to whether those count as invoices.

In light of the above, the motion for default judgment as to prejudgment interest is denied.

## V.   Conclusion and Next Steps

For the reasons set out above, see Part III and Part IV.A, default judgment can be entered as to (a) liability and (b) $83,500 in liquidated damages.

But the Court will not grant the default judgment motion just yet.

The Third Circuit has made clear that resolutions on the merits are preferred.  See In re SCH Corp., 569 F. App'x 119, 122 (3d Cir. 2014) ("[M]atters should generally be decided on their merits when that is possible."); Wiggins v. MacManiman, 698 F. App'x 42, 43 (3d Cir. 2017) ("We have long recognized the policy of law which favors disposition of litigation on its merits.").

Moreover, in a non-adversarial proceeding, like this one has been, there may well be a benefit to giving absent parties a last chance to get involved, should there be issues that have not received appropriately full consideration.

And, finally, in the plaintiff-non-prosecution context, providing a final warning to a party that is about to lose is often the right course.  See Russo, 345 F.R.D. at 79; see generally footnote 13 (describing the relevance here of plaintiff-non-prosecution case law).

The Court will take that approach here.

The Defendants shall file a response to the Plaintiff's motion for default judgment on or before noon on December 2, 2024.

If no persuasive response is received by then to the motion, the motion will be immediately granted, and a default judgment will

be entered in favor of the Plaintiff as to liability and for $83,000 in liquidated damages.

IT IS on this 22nd day of November, 2024, so **ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.